**RAMSEY et al. v. CROW.   (No. 613.)**

Court of Civil Appeals of Texas.   Waco.
Feb. 2, 1928.

Rehearing Denied March 8, 1928.

**1. Insane persons** ⊂⊃45—**Bondsmen for guardian of insane person's estate could not escape liability because funds were deposited for one year when they executed bond.**

In suit against former guardian of estate of an insane person and his bondsmen to recover for funds deposited in state bank without court authority, bondsmen could not escape liability on ground that at time they executed bond funds were deposited in bank for one year by the guardian, and that bondsmen on guardian's first bond were liable, where facts showed that funds were in bank subject to guardian's check.

**2. Insane persons** ⊂⊃45—**Guardian of incompetent, not following order to withdraw funds from bank, did not use ordinary care, relieving bondsmen (Rev. St. 1925, arts. 4180, 4181, 4190).**

Guardian of insane person did not use ordinary care in depositing funds of ward in a solvent bank, so as to relieve his bondsmen of liability, where he failed to follow direction of court to withdraw funds from bank and loan

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

them, and even if funds were loaned to bank it violated court order, and Rev. St. 1925, arts. 4180, 4181, 4190 authorizing investment of trust funds in named securities, and relieving guardian when loan is made on court authority.

**3. Appeal and error ⬅1058(1)—Excluding evidence that attorney told guardian's bondsmen fund could only be paid out by bank on court order held not ground for complaint, in view of other evidence.**

Bondsmen of guardian of an insane person, who were directors of bank, and knew at time of signing of guardian's bond that fund of ward was deposited in bank, when sued on guardian's bond, could not complain of exclusion of evidence that at time they signed bond the guardian's attorney told them the ward's fund was on deposit and could only be paid out on court order, since they testified that bank would have paid fund to guardian at any time after court ordered guardian to invest it.

Appeal from District Court, Johnson County; Irwin T. Ward, Judge.

Action by E. E. Crow, guardian, against S. P. Ramsey and others. From a judgment for plaintiff, defendants other than defendant Ramsey appeal. Affirmed.

J. R. Keith, of Cleburne, and R. L. Stennis, of Dallas, for appellants.

J. B. Haynes and E. A. Rice, both of Cleburne, for appellee.

BARCUS, J. In 1911, Mrs. Mary R. Carroll was adjudged of unsound mind in the county court of Johnson county. In January, 1920, S. P. Ramsey was appointed guardian of her estate, which consisted of about $9,000 in cash. On January 29, 1920, the said Ramsey, as guardian, was authorized to and did deposit the $9,000 in cash belonging to his ward in the Traders' State Bank at 5 per cent. per annum for a period of one year. Without any further order or action of the court, this fund was left in said bank until said bank closed its doors in April, 1922. Immediately after the Traders' State Bank closed its doors in April, 1922, the Guaranty State Bank was organized and took over all of the assets and assumed all of the liabilities of the Traders' State Bank, including the deposit in the name of S. P. Ramsey, as guardian of the estate of Mrs. Carroll. At the time the Guaranty State Bank took over the estate there was on deposit in said account the sum of $9,844.51. Thereafter the guardian loaned $3,000 of said estate, and there was deposited an annual interest on said fund $517.45, on which two small checks were drawn, leaving a balance of $7,241.96. In July, 1922, the children of Mrs. Carroll filed application, asking that Mr. Ramsey be removed as guardian of the estate of Mrs. Carroll, because he had not properly handled the es-

tate, alleging specifically that he had permitted the money to stay on deposit in the bank at a small rate of interest, when he could have loaned it for a much higher rate, and also complaining of his having loaned the $3,000 without taking proper security, and without having obtained an order therefor from the court; and also asking that he be required to give another bond, alleging that his prior one was insufficient. Mr. Ramsey replied to said pleading and offered to execute a new bond. On hearing of said proceeding on September 13, 1922, the county court refused to discharge the guardian but required him to execute a new bond in the sum of $25,000, which he did, and which was signed by the appellants in this case as sureties for Mr. Ramsey. The court criticized the guardian, Mr. Ramsey, for having permitted the funds to stay in the bank, and ordered and directed him to at once loan the money, and specifically held that the funds were in the bank without any permission or authority from the county court. Mr. Ramsey, as guardian, appealed from said order to the district court, and during the pendency of the appeal the Guaranty State Bank, in April, 1923, failed, and the banking commissioner took charge thereof. All of the bondsmen who signed the new bond for Mr. Ramsey in the sum of $25,000 in September, 1922, were officers or directors of the Guaranty State Bank.

In September, 1923, Mr. Ramsey, as guardian, filed his final report, stating that at the time the Guaranty State Bank closed he had on deposit $7,241.96, and that he had filed claim for said amount with the banking commissioner; that $6,844.51 of said fund had been deposited in said bank on June 4, 1922, without an order from the court, and that the bank had agreed to pay 5 per cent. interest per annum on said deposit, and that $397.45 of said amount had been deposited on March 24, 1923, on which the bank had agreed to pay 5 per cent. interest; and that same was deposited without authority from the court. He asked that he and his bondsmen be discharged from all liability and that a new guardian be appointed. When this report was acted upon by the county court in May, 1924, the county court removed S. P. Ramsey as guardian, and appointed appellee, E. E. Crow, as guardian of the estate of Mrs. Carroll. The county court found that S. P. Ramsey had deposited in the Guaranty State Bank $7,241.96, which belonged to the estate of Mrs. Carroll, and that the same had been deposited without the direct authority or knowledge of the court, and held that S. P. Ramsey was liable as guardian to the estate of Mrs. Carroll for said amount, and directed the new guardian, E. E. Crow, to bring suit to recover said

amount from Mr. Ramsey and his bondsmen. This suit was instituted to recover said amount. The cause was tried to the court, and resulted in judgment being entered for appellee, as guardian of Mrs. Carroll, against S. P. Ramsey and the bondsmen who signed his bond in September, 1922, for $7,241.96, with 6 per cent. interest thereon from the date same was deposited in the Guaranty State Bank.

[1] The bondsmen of Ramsey alone prosecute this appeal. Appellants contend that they are not liable for the funds that were on deposit in the Guaranty State Bank, because S. P. Ramsey had on June 4, 1922, before they signed the bond in September, deposited said money in the bank for a period of one year at 5 per cent. interest, and had thereby placed it beyond his power to control or withdraw same before the expiration of the year, and that, since the Guaranty State Bank failed in April, 1923, before the year had expired, those who signed the first bond, rather than the signers of the second bond, were liable for the loss. The record does not bear out appellants' contention. There is no evidence of any character that even suggests that Mr. Ramsey did on June 4, 1922, deposit the fund in the Guaranty State Bank to remain a full year, unless his final report, filed in September, 1923, could be so construed. The record shows without dispute that the money was on deposit in the Traders' State Bank when it closed in April, 1922, and that the Guaranty State Bank agreed to pay same, and there was no change made in said account, except it was on the books transferred to the books of the Guaranty State Bank. Mr. Ramsey did not, from his testimony, agree to let same remain until June, 1923, or until any other definite date. He testified on the trial of the case, and did not make any such contention, and the answer which he filed in September, 1922, at the time the new bond was filed, in reply to the application to have him discharged as guardian, did not suggest that said funds were on deposit in said bank for any definite length of time. Mr. Caldwell, one of appellants and the president of the Guaranty State Bank, testified positively that at any time after September, 1922, the date he and his coappellants signed the bond, the Guaranty State Bank would have paid said funds to Mr. Ramsey, the guardian of said estate, on the order of the court, as made on September 13th, requiring him to loan said funds. The record shows without dispute that at the time appellants signed the bond the funds were in the bank subject to the check of S. P. Ramsey as guardian, and if there was any loss by reason of the negligence of the guardian in handling said funds, appellants, and not those who signed the first bond, are liable therefor.

[2] Appellants further contend that they are not liable, because the guardian of an estate is only required to use ordinary care in the handling of the estate belonging to his ward, and that, since the evidence shows Mr. Ramsey, as guardian, deposited said funds in a bank that was considered solvent, he exercised ordinary care, and that they are not, therefore, liable by reason of the failure of the bank. We overrule this contention. The judgment of the county court, made on September 13, 1922, was positive and direct, requiring Mr. Ramsey, as guardian, to withdraw said funds from the bank and loan same. The evidence indicates that the president of the bank, who was one of the signers of the bond, and perhaps some of the other bondsmen, knew about this direct and specific order. Mr. Ramsey made no effort to loan said fund, or to secure same, and did not in any way attempt to comply with the direct order of the court. If, as appellants contend, said money was loaned by Ramsey to the Guaranty State Bank, of which they were the active and controlling officers, for 5 per cent. interest per annum, said loan was not only without any authority from the county court, but in direct violation of its order.

Article 4180 of the Revised Statutes provides that the guardian may invest the money of his ward in bonds of the United States or of the state of Texas, or of any county or district or subdivision of Texas, or in any bonds of an incorporated city or town, or loan same for the highest rate of interest. Article 4181 provides that, if such funds are loaned on real estate, the guardian shall take security. Article 4190 provides that, if a loan or investment is made with the approval of the county court, the guardian will not be liable. The authorities seem to hold without question that, where the guardian, without consulting with or obtaining the approval of the county court, loans the money of his ward, and the same is lost by reason thereof, the guardian and his bondsmen become liable. Murph v. McCullough, 40 Tex. Civ. App. 403, 90 S. W. 69; U. S. Fidelity & Guaranty Co. v. Taggars (Tex. Civ. App.) 194 S. W. 482; Freedman v. Vallie (Tex. Civ. App.) 75 S. W. 322; Kunz v. Ragsdale (Tex. Civ. App.) 200 S. W. 269.

[3] Appellants complain of the action of the trial court in excluding the testimony of appellants to the effect that, at the time they signed the bond on September 13, 1922, Mr. Haynes, the attorney for the guardian, told them that the money belonging to the estate was then on deposit in the Guaranty State Bank, and could only be paid out on the order of the county court. It does not appear that appellants have suffered any injury by the court having excluded this testimony. The money was on deposit in the

bank at the time the bond was signed, and appellants knew this fact, without being so told by Mr. Haynes or any one else, and appellants themselves testified that the bank would have paid the funds to Mr. Ramsey at any time after the court made the order on September 13, 1922, requiring the guardian to invest said money.

We have examined all of appellants' assignments of error and same are overruled. The judgment of the trial court is affirmed.